UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-1289 |
| ) | |
| TWO MILLION SEVEN HUNDRED ) | |
| SIXTY-SEVEN THOUSAND TWO ) | |
| HUNDRED AND TWO DOLLARS AND ) | |
| TWENTY-SEVEN CENTS ($2,767,202.27) ) | |
| IN U.S. CURRENCY ) | |
| ) | |
| Respondent. ) | |

## O R D E R

Before the Court is Claimant James Thomas Kemp's ("Kemp") Motion to Bifurcate Cross-Claims and Determine the Distribution of the Forfeited Funds [#126]. For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

### BACKGROUND

This is a civil forfeiture action in rem pursuant to Title 18 U.S.C. § 981, for the forfeiture of $2,767,202.27, which the Government alleges represents money obtained by Leslie Strong ("Strong") from investors as a result of a fraudulent investment scheme. Strong has not been charged with a criminal offense as a result of the fraud and no restitution order has been entered against him. Numerous parties, including Strong, filed claims asserting an interest in the $2,767,202.27; however, this Court struck Strong's Claim and Answer for failure to prosecute on June 6, 2005. In addition to the numerous claims filed in this case against the $2,767,202.26, many claimants also filed cross-claims for damages against Strong. Strong did not answer the cross-claims and, by Order of this Court dated December 9, 2005, Strong was found to be in default on all of the cross-claims filed against him.

**DISCUSSION**

In the current Motion, Kemp argues that this Court should (1) bifurcate the cross-claims filed against Strong from the underlying in rem action, and (2) determine how the $2,767,202.27 should be distributed among the claimants. The Court will address each issue separately.

**1.      Motion to Bifurcate**

Kemp argues that this Court should bifurcate the cross-claims from the underlying in rem action so that the Court can proceed with distributing the $2,767,202.26. Kemp claims that bifurcation is proper because this Court struck Strong's Claim and Answer against the $2,767,202.27 for failure to prosecute on June 6, 2005, and therefore, no remaining issues remain affecting the distribution of the $2,767,202.26.

The Government responded to Kemp's Motion and does not object to bifurcating the cross-claims from the underlying action. Additionally, Howard Jachter, as Trustee of Triunity, S.A. and Triunity, S.A. (Collectively "Triunity") filed a response to Kemp's Motion and agrees that the cross-claims may be bifurcated because "the amount of any Cross-Claim will be determined by the difference between the amount of the seized funds distributed to a Cross-Claimant and the amount of such Cross-Claimant's valid claim." (Triunity's Response to Kemp's Motion, July 29, 2005, at 1.)

In contrast, Claimants Success Concepts, Inc., William H. Blackwell, Jr.; Robert and Jane Meherg Family Partnership; Arthur F. Mueller, Trustee of the Pauline K. Rucker Trust; Metropolitan Seventh Day Adventist Church and Pastor John Glenn Roberts; and Robert Allman (collectively "Additional Claimants") filed a Response objecting to Kemp's Motion. The Additional Claimants do not agree that the cross-claims need to be bifurcated. Rather, the Additional Claimants argue that this Court should proceed with determining how to

distribute the $2,767,202.26 and should not bifurcate the cross-claims because the distribution of the $2,767,202.26 will affect the amount of the cross-claims.

The Court finds that bifurcation of the cross-claims is the appropriate action at this point in the litigation. Even if the distribution of the $2,767,202.26 affects the amount of the cross-claims and even if some cross-claimants receive a portion of the $2,767,202.26, this does not prevent the Court from bifurcating the claims because any recovery that a cross-claimant receives from the $2,767,202.26 would offset the amount that the cross-claimant could potentially recover from Strong. Accordingly, the Court finds that bifurcation is proper and orders that all of the cross-claims be bifurcated from the underlying in rem action.

**2.     The Distribution of Funds**

The final issue in this case is how the seized $2,767,202.26 should be distributed amongst the claimants. Essentially, there are two groups of claimants to the funds. The first group is comprised of individuals such as Kemp. These individuals were allegedly defrauded by Strong; however, they cannot trace their losses directly to the $2,767,202.26. The second group is a group of claimants who are able to trace their losses directly to the $2,767,202.26.

Kemp argues that this Court should distribute the $2,767,202.26 on a pro rata basis to all of the claimants who were defrauded by Strong and not limit the distribution to those individuals whose losses can be traced to the seized funds. The Government disagrees and argues that the seized funds should only be distributed to those individuals who have an ownership interest in the specific property (i.e., those individuals who can trace their losses to the $2,767,202.26). The Government refers to 18 U.S.C. § 983, which provides the general rules for civil forfeiture proceedings and outlines a defense to forfeiture for "innocent owners". Specifically, § 983(d)(1) states that an "innocent owner's interest in

- 3 -

property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). Additionally, § 983(d)(6) states:

> (6) In this subsection, the term "owner" -
>
> (A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and
>
> (B) does not include -
>
> (i) a person with only a general unsecured interest in, or claim against the property or estate of another;
>
> (ii) a bailee unless the bailor is identified and the bailee shoes a colorable legitimate interest in the property seized; or
>
> (iii) a nominee who exercises no dominion or control over the property.

18 U.S.C. § 983(d)(6). Therefore, the Government argues that only those individuals who can show a specific interest in the $2,767,202.26 are "owners" as defined by the statute and are the only people who should be able to recover.

In addition to the Government's Response to Kemp's Motion, the Additional Claimants filed a Response to Kemp's Motion stating "they join in the request that the Court determine that distributions of the Defendant funds should be made to all victims who have asserted valid claims in this action on a pro rata basis which is fair and equitable." (Additional Claimant's Joint Response to Motion, July 25, 2005, at 2.)

Triunity also filed a Response to Kemp's Motion and agrees with the Government that the funds "should be distributed on a fair and equitable basis to valid claimants who can demonstrate an ownership interest in funds held in the Sigma Trust Account at the time the funds seized herein were transferred out of said account." (Triunity Response, at 2.)

Both the Government and Kemp make persuasive arguments regarding who should share in the distribution of the seized funds. Kemp cites numerous cases which lead to the conclusion that all investors defrauded by Strong should share in the distribution. *See United States v. Durham,* 86 F.3d 70 (5th cir. 1996); *SEC v. Forex Asset Management*, 242 F.3d 325 (5th Cir.); *United States v. Cabe*, 311 F. Supp. 2d 501 (D.S.C. 2003). However, the Government argues that these cases are not instructive or persuasive because they all deal with the distribution of money to victims in the context of a restitution order as part of a criminal case or a civil enforcement action by the Securities and Exchange Commission and not in the context of a civil forfeiture action in rem. The Government further argues that Kemp's reliance on *United States v. Cabe* is misplaced because the court in *Cabe* specifically differentiated between different classes of claimants and only allowed certain claimants to recover. The Government, therefore, argues that *Cabe* actually stands for the proposition that "a critical legal analysis of the claims on file must be undertaken by the court before deciding which claims to grant and which to deny." (Government's Response to Kemp's Motion, July 28, 2005, at 5.)

In the absence of 18 U.S.C. § 983, the case law seems to indicate that any claimant who can prove that he or she was defrauded by Strong's scheme should share in the recovery. *See Cabe,* 311 F. Supp. 2d at 511–12 (finding that all of the individuals who invested with Cabe were entitled to share in the distribution of funds except those individuals whose money was actually a gift and not an investment); *Forex*, 242 F.3d at 331–32 (affirming the District Court's decision to distribute seized funds amongst all investors even though some of the money was directly traceable to one investor). However, the instant case arises specifically in the context of a civil forfeiture brought pursuant to 18 U.S.C. § 981 and further defined by 18 U.S.C. § 983 (General Rules for Civil

Forfeiture).   18 U.S.C. § 983(d)(6)(A) specifically defines the term "owner" as being a "person with an ownership interest in the *specific property* sought to be forfeited." 18 U.S.C. § 983(d)(6)(A) (emphasis added).  None of the cases cited by Kemp deal specifically with this situation.

Admittedly, the Fifth Circuit's opinion in *United States v. Durham* arises out of a civil forfeiture pursuant to 18 U.S.C. § 981.  *Durham,* 86 F.3d at 70.  In *Durham,* the Fifth Circuit affirmed the District Court's holding that ordered a pro rata distribution of seized funds to all defrauded investors of a fraudulent loan brokerage scheme and not just to those individuals whose investments could be traced to the specific money that was seized. *Id.* at 73.  However, that case was decided in 1996, four years before the enactment of 18 U.S.C. § 983 in 2000.  Therefore, even though the *Durham* case is factually similar to the instant action, the passing of the Civil Asset Forfeiture Reform Act in 2000 changed the legal landscape with respect to civil forfeitures and clearly states that only those individuals who can show an interest in the specific property being forfeited are eligible to recover forfeited property.

Nothing in the legislative history of the Civil Asset Forfeiture Reform Act indicates that Congress was concerned with civil forfeitures in the context of this type of "ponzi" or "pyramid" investment scheme, a scheme where later investments are used to pay earlier investors returns. Whether Congress would have intended that only those individuals who could prove an interest in the type of specific property to be forfeited here should recover is unknown.  What is known is that the plain language of 18 U.S.C. § 983 unambiguously defines the term "owner."   Accordingly, the Court is required to find that only those individuals who can prove that they have an ownership interest in the specific property (i.e. the $2,767,202.26) are entitled to share in the distribution of the seized funds.  The seized

funds will be distributed on a pro rata basis amongst those individuals who qualify as owners, as defined by 18 U.S.C. § 983.

## CONCLUSION

For the reasons set forth above, Kemp's Motion to Bifurcate Cross-Claims and Determine the Distribution of the Forfeited Funds is [#126] is granted in part and denied in part.

ENTERED this 20thday of December, 2005.

                                                s/Michael M. Mihm
                                                Michael M. Mihm
                                                United States District Judge