E-FILED
Wednesday, 08 November, 2006  01:30:28 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-1289 |
| | ) | |
| TWO MILLION SEVEN HUNDRED | ) | |
| SIXTY-SEVEN THOUSAND TWO | ) | |
| HUNDRED AND TWO DOLLARS AND | ) | |
| TWENTY-SEVEN CENTS ($2,767,202.27 | ) | |
| IN U.S. CURRENCY | ) | |
| | ) | |
| Respondent. | ) | |

## O R D E R

Before the Court is a Motion for Summary Judgment Against the Claim of Burlington Assembly of God [#242] brought by Claimants Success Concepts, Inc. ("Success"), William H. Blackwell, Jr. ("Blackwell"), Robert and Jane Mehberg Family Partnership ("Mehberg"), Arthur F. Mueller, Trustee of the Pauline K. Rucker Trust ("Mueller"), Metropolitan Seven Day Adventist Church and Pastor John Glenn Roberts ("Roberts"), and Robert Allman ("Allman") (hereinafter, the "Six Claimants").  For the reasons set forth below, the Motion is GRANTED.

### BACKGROUND

This is a civil forfeiture action in rem pursuant to Title 18 U.S.C. § 981, for the forfeiture of $2,767,202.27, which the Government asserts represents money obtained by Leslie Strong ("Strong") from investors as a result of a fraudulent investment scheme.  By previous Order dated December 20, 2005, the Court found that the relevant dates for determining which investments can be traced to the $2,767,202.27 are December 6, 2001, and December 12, 2001, the dates on which a total of $4,500,000.00 was transferred out of the Sigma Trust Fund to the Highlander Global Trust.  The Court has also found, at a

hearing held on July 19, 2006, that in order to be entitled to a share of the $2.76 million under the Civil Asset Forfeiture Reform Act ("CAFRA"), a claimant must establish not only that it had maintained investments with Strong before the relevant December 2001 dates, but that its investment can be traced to actual seized funds, using the "first in, first out" method of tracing adopted by Illinois law.

## DISCUSSION

The Six Claimants have brought this Motion for Summary Judgment against the Claim of Burlington Assembly of God, arguing that the evidence establishes that Burlington's claim cannot survive the first stage of inquiry–that is, that Burlington Assembly of God's investment was not part of the Sigma Trust account on or before December 6 or 12, 2001. Therefore, the Six Claimants argue that the Court should grant Summary Judgment against Burlington's Claim.

### A. Standard of Review

Summary judgment should be granted where the pleadings and other admissible evidence show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing that there are no disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

- 2 -

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. In other words, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

### B.  Burlington Assembly of God's Claim

On September 18, 2000, Burlington Assembly of God invested $1,100,000.00 in the Theta Trust account at Wells Fargo Bank. On September 29, 2000, $1,000,000.00 was transferred out of the Theta Trust account to an unidentified recipient. On October 2, 2000, $100,000.00 was transferred out of the Theta Trust account, leaving a balance of about $2.49 million in the Theta Trust. On October 12, 2000, that $2.49 million was transferred from the Theta Trust  to the Epsilon Trust at Washington Mutual Bank. On October 13, that same amount was transferred out of the Epsilon Trust to open the Omicron Trust at Firstar Bank. On October 16 and 26, 2000, about $2.49 million was transferred from the Omicron Trust to the Sigma Trust.

The Six Claimants argue the evidence establishes that the $1,000,000.00 and $100,000.00 transferred out of the Theta Trust account in late September and early

- 3 -

October were the $1.1 million of funds invested by Burlington Assembly of God. Because Burlington's funds were transferred out before the Theta Trust balance was transferred to the Epsilon Trust, so argue the Six Claimants, Burlington's funds could never have even made their way to the Sigma Trust, and therefore, its claim should be barred.

To support their theory that it was Burlington's $1.1 million dollar investment that was transferred out of the Theta Trust–$1,000,000.00 on September 29 and $100,000.00 on October 2–the Six Claimants rely chiefly on Exhibits 54 and 55, which the Six Claimants represent in their Motion to be a Wells Fargo Bank computer print-out of the history of the Theta Trust account between September 13, 2000 until October 2, 2000. The history reflects a $1,100,000.00 deposit on September 18, with a handwritten notation "Romero." Romero was one of the Trustees of the Theta Trust. The history reflects a $1,000,000.00 transfer out on September 29, and a $100,000.00 transfer out on October 2. These entries also show a handwritten notation "Romero." While the other deposits and withdrawls have hand-written notations, these three are the only ones with "Romero." The Six Claimants argue that this establishes that the deposit and transfers out are obviously connected and that it was undisputedly Burlington's funds that were transferred out of the Theta Trust on September 29 and October 2. The Six Claimants also rely heavily on Exhibit 56, which the Six Claimants represent in their Motion to be a hand-written "schedule of investors in the Theta Trust as of October 2, 2000, prepared by an employee of Strong." Burlington Assembly of God is not listed on this schedule, which Six Claimants argue is further proof that Burlington's investment was not part of the funds which were transferred from the Theta Trust to the Epsilon Trust, and eventually ended up in the Sigma Trust.

- 4 -

In response to this argument, Burlington Assembly of God argues that the evidence does not undisputedly show that its investment cannot be traced to the Sigma Trust.  It states that it never authorized the transfer of any funds on its behalf.  It argues that the $1,000,000.00 and $100,000.00 transfers identified on Exhibits 54 and 55 are not necessarily Burlington's funds just because they were marked with the "Romero" notation, as their deposit was marked.

Finding that the proper resolution of this Motion would turn, at least in part, on the "credibility" of the various exhibits, the Court ordered the Government to respond to the Motion for the Summary Judgment and ordered the Movants to provides supplemental briefing to address the authenticity of the documents.  Both the Government and Six Claimants responded as ordered.  The Court also invited any other party of interest, including Burlington Assembly of God, to file a response to the supplemental pleadings of the Government and Six Claimants.  On November 2, 2006, Burlington Assembly of God did file a such a response.  The Six Claimants, the Government, and Claimant Frank L. Davis each filed a reply to Burlington Assembly of God's Response.  The matter is now fully briefed, and the Court will proceed to address the supplemental pleadings.

The Six Claimants' supplemental pleading represents that Exhibits 53-56 and 62-64 came from the business records provided by Leslie Strong to the U.S. Attorney's office, and that each of the exhibits was prepared by the same employee, Bert A. Gates, in Strong's offices.  The Six Claimants also state that handwritten notations on the computer-printed account histories (Exhibits 54 and 55) would have been made by a Strong employee and were contemporaneous with preparation of the account history.

The Government confirms that the Six Claimants' Exhibit 56 was part of the records  of the Theta trust that were submitted by Strong and that John Romero was a

- 5 -

trustee for the Theta Trust who had information on how to make wire transfers.  The Government does not disagree with the Six Claimants' position in their Motion for Summary Judgment against Burlington's claim.  The Government also points to other evidence that suggests that Burlington's investment was not part of the Theta Trust at the dates in question.  Burlington never appears on any ledger of investors in the Theta Trust.  Moreover, the Government asserts that a computer search of all documents given in discovery by Leslie Strong do not reveal any other documents concerning Burlington Assembly of God.  While other investors did receive a notice of receipt of funds from the Theta Trust, Burlington does not possess any such receipt or promissory note from the Theta Trust.  The Government also points out that "[i]t appears that until contracted by United States Postal employees, Burlington Assembly of God took no action follow-up on its transfer of $1.1 million.  It did nothing to find out what happened to its funds, what interest it was earning and why nothing had been paid to them."  Gov't Resp., at 5.  The Government concludes that, while Burlington has evidence of making a $1.1 million transfer, "[i]t appears from the records that the money sent by Burlington Assembly of God was taken by John Romero."  *Id.*

In reply to the Six Claimants' and Government's supplemental briefs, Burlington Assembly of God filed a letter from Dr. Ronald Graban, who was the "authorized signatory" for and personally handled Burlington's investment with John Romero. Attached to Graban's letter are 14 numbered exhibits. Exhibits 1-4 provide documentation of Graban's authority to act on Burlington's behalf and Romero's initial solicitation to invest.

Likely in response to the Government's allegation that Burlington "did nothing to find out what happened to its funds," Graban states that "[s]ince the initial investment by

the church, I have attempted to exercise due diligence with regard to their investment program."  Graban states that he asked Romero about the status of the Church's investment on October 20, 2000 (which is shortly after the dates the Six Claimants allege that Burlington's funds were transferred out of the Theta Trust).  Graban states that Exhibit 5 is a "responsive" fax from Romero, but the fax is actually only a report entitled "An Introduction of How the Federal Reserve Bank Uses Prime Bank SLC's and PGB's to Help Stabalize the US Dollar Abroad," and it makes no representation about the status of Burlington's investment.  Exhibits 6-11 are correspondence from Graban to Romero between December 2000 and August 2001, most of which inquire about the status of the investment.

Exhibits 12-14 are correspondence from Romero to Graban regarding the transfer of funds.  Exhibit 12 is a trading contract, which Graban states "indicated a potential payout on our investment."  Exhibit 13, a letter dated 12/10/01, states:

> Dear Ron,
> I just wanted to share a sanitized copy of the $220M USD that were SWIFTED to Citizens Bank.  It is now up to Citizens Bank to SWIFT the appropriate funds to Bank of America, Chula Vista.  Then funds will be posted in your account as well as other that have been waiting for the *big bang*.  We should get a copy of the transfer this evening.  For the sake of conversation, I would guess that Thursday, may be when they become available to you.  Pack your bags, we are read to go to Miracle Valley.
> Sincerely,
> John Romero.

The second page of exhibit 13 is a facsimile correspondence between two parties whose names have been blacked out, though John Romero is "CC'ed" to this fax, and it is typed on "Merchants International Holding Limited" letterhead.  The correspondence states, "[a]s per our communication to you on December 6, 2001, the SWIFT wire transfer . . . in

the total mount of USD$220,000,000.00 from the Export Development Bank of Egypt, in to the Citizens Bank SWIFT coordinates you provided, will be completed no later that Sunday 12-09-01 . . . ."  The final exhibit, number 14, is a letter from Romero to Graban in February 2002 stating that due to a blackout, "they were unable to send the swift in."

Applying the Summary Judgment standards to the record before it, the Court finds that Burlington Assembly of God has not presented sufficient evidence to overcome the Six Claimants' showing that they are entitled to Summary Judgment. While the fact that the $1.1 million deposit on 9/18/00 and the two withdrawals in question were all labeled with "Romero" in various ledgers and account statements does suggest that the transactions may have been connected, the Court does not adopt the Six Claimants' position that these entries "show conclusively that the deposit and withdrawals were related . . . ."  Six Claimants' Mtn for Summ. J., at 5.  Exhibits 54 and 55 report only the activity on the Theta trust between September 13 and October 2.  Also, it is unclear what the "Romero" notation means.  If it is meant to indicate that Romero handled the transaction, it is still possible that Romero could have handled any number of transactions outside the time frame reflected in these exhibits.

Far more compelling, the Court finds, are the contemporaneous business ledgers of the Trust provided by Strong and attached as exhibits by the Movants and the Government.  Movants' Exhibit 56 (Gov't Exhibit E) is a list of investors with the Theta Trust through October 2, after Burlington allegedly invested with the Theta Trust and before all of the funds from the Theta Trust were deposited in the Epsilon Trust. Burlington is clearly not listed on this schedule.  Its funds were therefore not part of the pool that was deposited into the Epsilon Trust and eventually made their journey to the Sigma Trust.

Burlington Assembly of God has failed to provided any evidence to refute what these bank statements and business records establish. Burlington's mere assertions that there may be errors in the documents or that it did not authorize the transfers do not present any more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. In fact, it is the additional exhibits submitted by Burlington Assembly of God that convince the Court that summary judgment against Burlington's Claim is proper. Exhibit 13, the December 2001 letter from John Romero to Graban which apparently explains how Burlington's funds were being shifted around, represents that the funds were transferred from an account at the Export Development Bank of Egypt to an account at the Citizens Bank.

While this Court's inquiry is focused on transfers between accounts that took place in December 2001, the relevant accounts in this case–the "transferor" Sigma Trust and the "transferee" Hereford Trust–were maintained at Firstar Bank and Desjardins Bank, respectively. See Forfeiture Complaint, at ¶ 16A. While the exhibits submitted by Graban likely indicate that Romero was still exercising control over Burlington Assembly of God's investment through December 2001, there is no evidence that those funds were ever part of the Sigma Trust account, and therefore, they cannot be traced to the $2.76 million.

The Court recognizes that it has used a "first in, first out" (FIFO) method of tracing at other points in this case in order to determine the eligibility of certain claims to the $2.76 million. Based on the instant summary judgment record, it is unclear how FIFO would apply to the transfers in and out of the Theta trust. Moreover, neither party has presented any argument that a FIFO tracing would be an appropriate method for resolving this particular Motion, and the Court concludes that the exhibits described

- 9 -

above sufficiently establish that Burlington Assembly of God can not trace its funds to the $2.76 million.

Because Burlington has not met its burden under summary judgment standards, the Court finds that Summary Judgment in favor of the Six Claimants is proper.

## CONCLUSION

For the reasons set forth above, the Six Claimants' Motion for Summary Judgment Against the Claim of Burlington Assembly of God [#242] is GRANTED.

ENTERED this 7th day of November, 2006.


 s/Michael M. Mihm
Michael M. Mihm
United States District Judge